## THE ORANGE.[1]

### RONAN *v.* THE ORANGE.

**(District Court, E. D. New York. May 15, 1891.)**

1. COLLISION—STEAM-VESSELS CROSSING—UNANSWERED WHISTLE—DUTY TO STOP.
    A tug, with a tow on her port side, was crossing the course of a ferry-boat at night, the ferry-boat having the tug on her starboard hand. The tug blew one whistle to the ferry-boat, received no reply, but kept up her speed; blew again to the ferry-boat, and, again receiving no reply, rang to hook up the engine, in an endeavor to pass ahead of the ferry-boat. Collision followed between the latter and the tow. *Held*, that the fact that no reply to her signal came from the ferry-boat was notice to her that her signal had not been heard, and it was her duty to stop at once.

2. SAME—DISAPPEARANCE OF RED LIGHT—RIGHTS OF CROSSING VESSEL.
    The vessels being on crossing courses, and the ferry-boat having the tug on her starboard hand, the tug claimed that it was her right to keep on, and the duty of the ferry-boat to stop. As the vessels approached, the red light of the tug, for some unexplained reason, disappeared from the view of those on the ferry-boat. *Held* that, if the red light of the tow was not displayed, the ferry-boat was under no obligation to stop, but was justified in proceeding as she did.

In Admiralty. Suit to recover damages caused by collision.

*Carpenter & Mosher*, for libelant.

*Abbett & Fuller*, for claimant.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

BENEDICT, J. This action is to recover for injury done to the barge Victoria while being towed along-side the tug Welcome, by her being run into by the Hoboken ferry-boat Orange on the night of June 29, 1888, which night was clear and dark, without a moon. The tug Welcome had taken the barge Victoria from the Osceola's tow, about off Fourteenth street, in the middle of the North river, to take her to pier 5 of the Hoboken coal docks, a pier on the Jersey side of the Hudson river, just below the ferry-slips of the Hoboken ferry. The barge was put along-side the tug, on the port side. She had a paddle-box some 8 feet wide and a pilot-house that shut off the red light of the tug from the view of any vessel approaching off the port bow on an angling course. A witness for the libelant testifies that for this reason, when the tug started with the barge, a red light was placed on the port side of the pilot-house of the barge, the tug also having a red light on her port side. The tow, therefore, when so arranged, presented this peculiarity,—that so long as both the red light of the tug and the red light of the barge kept burning the tow would display in certain positions to vessels approaching on her port on certain courses two red lights, and on other courses only one light; while, if the light on the barge should go out, the tow would, in certain positions, display to vessels approaching on the port one red light, and in other positions no red light at all, owing to the obstruction of the light from the tug's port light by the barge she had on her port side. Of course, without a red light on the barge, the tow, by porting, might at any time cause her red light to disappear from the sight of a vessel approaching off the port bow. So arranged, the tug and barge proceeded at a speed of about nine miles an hour towards pier 5 of the Hoboken coal docks. This course carried her directly across the mouth of the ferry-slips of the Hoboken ferry-boats, and near to the piers when off those slips. As the tug approached the ferry-slips, the pilot of the tug saw a ferry-boat off to port, displaying all her lights, including cabin lights, and knew, as he says, that it was a Hoboken ferry-boat, bound for the Hoboken ferry-slips. It proved to be the ferry-boat Orange. When the tug neared the ferry-slips, across the mouth of which his course would carry him, the master of the tug, according to his testimony, gave a signal of one whistle to the ferry-boat, received no reply, kept up his speed, and ported a little. Then he blew again to the ferry-boat a single whistle, and received no reply, then rang to the engineer to hook up, and give the engine its full power in the effort to pass the ferry-slip ahead of the ferry-boat in safety. The effort failed, and the barge was struck by the ferry-boat on her port side, just abaft amid-ships, and received the injury for which this suit is brought. The boats were then so near the piers that the force of the collision drove the barge into one of the slips.

From these facts it clearly appears that the tug was guilty of fault conducing to the collision in keeping up her speed after she observed that her first signal to the ferry-boat was not replied to. The fact that no reply to her signal came from the ferry-boat was notice to her that her signal had not been heard, and it was her duty to stop at once.

Had she stopped, there would have been no collision. Instead of stopping, she kept up her speed, and by so doing she brought herself directly in front of the ferry-boat, then heading for her slip, and made collision inevitable. But it is said the ferry-boat was on a course crossing the course of the tug, and having the tug on her starboard hand; and it was therefore the right of the tug to keep on, and the duty of the ferry-boat to stop, and allow the tug to pass ahead of her. Undoubtedly such was her duty, if, by the method prescribed by the law, .namely, by displaying a red light, the tug had made her course known to the ferry-boat. But if the red light of the tow was not displayed the ferry-boat was under no obligation to stop, but was justified in proceeding as she did. As to the fact that from some cause or other the red light of the tow disappeared from sight after being once seen by the ferry-boat, and was not thereafter displayed until too late to avoid collision, I entertain no doubt. Three witnesses from the ferry-boat, including a pilot, who was in her pilot-house, in no way responsible for the navigation of the ferry-boat, testify that a red light was seen which in a moment disappeared, and that after that no red light was visible until just before the collision, and when the ferry-boat had headed in for her slip and her engine slowed; that upon the red light appearing again, the engine of the ferry-boat was at once stopped and reversed, but the vessels were in collision before it was possible for the ferry-boat to stop. The appearance of these witnesses for the ferry-boat upon the stand, and their testimony as it was given, satisfied me of the truth of their statement in regard to the disappearance of the red light. How the red light came to disappear as it did does not appear. Its disappearance would be accounted for, if at the time only the tug's port light was burning, by a change of course on the part of the tug, as that would cause the tug's port side to be intercepted by the pilot-house of the barge. The captain of the barge testifies that when he started in tow of the tug he lighted a red light, and put it up on the port side of the pilot-house of the barge, because of the liability of the tug's red light to be obstructed; that he saw this light burning shortly after the tug left the Osceola; that he did not see it again before the collision, but the next morning, when he went to the barge where she had been beached near Fourteenth street, the red light was in place, and still burning. This may all be true, and yet the light might have been out at the time of collision, for the light may have gone out before the collision, and been lighted again before 9 A. M. of the next day. The case contains no evidence of a relighting of the lamp, nor is any evidence produced from the barge as to what was done on board the barge from the time of collision until 9 A. M. the next morning; but there are some circumstances proved that point to the possibility that the barge's red light was not burning at the time of collision. For instance, no one seems to have at any time seen two red lights on the tow subsequent to leaving the Osceola, although, if the red light which the captain of the barge says he put up on the barge was burning as the tow approached the ferry-boat, two red lights must have been visible from the ferry-boat at some points. Again, the pains

taken by the witness Lansing from the tug to have it understood that he does not swear to a light on the barge is perhaps suggestive. Still further, none of the witnesses from the ferry-boat who saw the tug and barge as the ferry-boat approached speak of a red light displayed on the barge. The red light of the tug was burning, and while it is easy to believe that the absence of the unusual feature of a second red light on the barge along-side would not be remarked, it seems to me that the presence of a red light there, if burning, would have been remarked, and the omission of any witness to mention that two red lights were dis-. played on the tow at the time the barge was struck indicates that the two red lights were not both burning at that time. But, whatever may have been the cause of the disappearance of the only red light displayed to the ferry-boat as she approached, the fact of its disappearance is proved, and the evidence showing that the tug's red light would be made to disappear by change of course on the tug, whether the red light on the barge had gone out, or been temporarily obstructed by some intervening object, the cause of its disappearance is immaterial. The disappearance of the red light being proved, the navigation of the ferry-boat cannot be held to be faulty, and her liability for the collision has not been shown.

The libel must therefore be dismissed as against the ferry-boat, and as against the tug, which was brought in by petition; the evidence being that the barge and the tug belonged to the same owners.